**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VICTORIA GRAUDINS,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **RETRO FITNESS, LLC, et al.,** | : | **NO. 11-6466** |
| **Defendants.** | : | |

**M E M O R A N D U M**

GENE E.K. PRATTER, J.                                                                FEBRUARY 5, 2013

Victoria Graudins has filed a wide-ranging complaint against Retro Fitness, LLC, Daniel

Kraft, Jim Kanagie, Dan Carr, and Paul Carr that includes hostile work environment and

retaliation claims under Title VII as well as a variety of state law claims. In response, the

Defendants (with the exception of Paul Carr) filed a motion for partial summary judgment and a

motion to sever. For the following reasons, the Court denies the motion to sever and grants in

part and denies in part the motion for partial summary judgment.

**I. Background**

*A. Procedural History*

On October 17, 2011, Ms. Graudins filed a multi-count complaint. Ms. Graudins brings a

wide array of claims, which are summarized in the following chart:

| Cause of Action | Relevant Defendants |
|---|---|
| Hostile work environment (Title VII) | All defendants |
| Hostile work environment (Pennsylvania law) | All defendants |
| Retaliation (Title VII) | All defendants |
| Retaliation (Pennsylvania law) | All defendants |
| Intentional Infliction of | All defendants |

| | |
|---|---|
| Emotional Distress | |
| Negligent Infliction of Emotional Distress | All defendants |
| Negligent Supervision | Retro Fitness, Daniel Kraft, and Dan Carr |
| Assault and Battery | Paul Carr |

All defendants have been served and have answered the complaint, with the exception of Paul Carr, who has not filed an answer. Ms. Graudins has not moved for default judgment against Paul Carr, who was convicted of sexually assaulting her while he worked with her at Retro Fitness.

On September 5, 2012, the Defendants, other than Paul Carr, filed a motion for partial summary judgment. They also filed a motion to sever all claims against Paul Carr in order to separate the trials of Paul Carr and the other Defendants. Ms. Graudins opposes both motions.

## B. Factual Background

Retro Fitness is a health club that employed Ms. Graudins for seven months from March 2010 to October 2010. During her employment, Daniel Kraft was the owner and manager of Retro Fitness, Dan Carr supervised her, and Jim Kanagie was a salesman at Retro Fitness. Ms. Graudins argues that all three of these men are liable to her individually.

Ms. Graudins has testified that Mr. Kanagie would put his hands around her at work, flip her upside down, and describe different sexual activity positions to her. Furthermore, Ms. Graudins stated in interrogatory responses that Mr. Kanagie sexually propositioned her, engaged her in sexually explicit conversations, and showed her pornographic images throughout her time at Retro Fitness. Ms. Graudins has testified that when Mr. Kanagie harassed her she would giggle and pull away from him as a "defense mechanism."

As for Dan Carr, Ms. Graudins has testified that he witnessed some of the instances of Mr. Kanagie touching her, that he joked with Mr. Kanagie about how attractive Ms. Graudins

was, and that he would laugh at Mr. Kanagie's comments towards her, although he also told Mr. Kanagie not to make such comments. The parties agree that Dan Carr never touched Ms. Graudins.

There is no evidence that Mr. Kraft touched Ms. Graudins, made offensive comments to her, or witnessed her being sexually harassed. Furthermore, Ms. Graudins did not make any verbal or written complaints to Mr. Kraft regarding the alleged harassment by Dan Carr and Mr. Kanagie, although she has testified that she was afraid she would lose her job if she reported their conduct.

On June 18, 2010, Paul Carr (Dan Carr's brother and another Retro Fitness employee) allegedly sexually assaulted Ms. Graudins at work.[1] Eventually, Paul Carr was charged for the assault and convicted in Philadelphia County on multiple criminal counts, including indecent assault and indecent exposure. Ms. Graudins has testified that Paul Carr continued to be employed at Retro Fitness after the assault, that she was forced to work with him after the assault, and that he was the person who gave her the paycheck she received upon her termination. Ms. Graudins also has testified that she was terminated in October 2010 for taking a day off from work, even though Dan Carr gave her permission to do so. Ms. Graudins believes the company was looking for a reason to fire her after she reported the sexual assault.

On March 29, 2011, Ms. Graudins filed an EEOC charge, and she cross-filed the charge with the Pennsylvania Human Relations Commission (PHRC). The charge did not expressly refer to Dan Kraft, Jim Kanagie, or Dan Carr.

---

[1] Ms. Graudins has testified that about a week before the assault Paul Carr made a statement about "taking [her] into a backroom" and having sexual intercourse with her. She also testified that she was afraid of reporting this statement to his brother Dan Carr, her supervisor.

## II.  Legal Standard for a Motion for Summary Judgment

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party.  *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  *Id.* (citing *Anderson*, 477 U.S. at 248).  Under Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the non-moving party.  *See Anderson*, 477 U.S. at 255.  However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute."  Fed. R. Civ. P.

56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III. Title VII Claims

The Defendants have moved for summary judgment as to Ms. Graudins's Title VII claims against Mr. Kraft, Mr. Kanagie, and Dan Carr. The Third Circuit Court of Appeals has long established that individual employees cannot be held liable under Title VII. *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) ("[W]e are persuaded that Congress did not intend to hold individual employees liable under Title VII."); *see Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996) ("[I]ndividual employees cannot be held liable under Title VII."). This holding applies even if the individuals in question own the defendant corporation. *Milliner v. Enck*, No. 98-467, 1998 U.S. Dist. LEXIS 6651, at *7 (E.D. Pa. May 8, 1998) ("[I]ndividual owners cannot be held liable under Title VII[.]"); *see also McGovern v. Jack D'S, Inc.*, No. 03-5547, 2004 U.S. Dist. LEXIS 1985, at *12-13 (E.D. Pa. Feb. 3, 2004) (holding same). Therefore, the Court will dismiss the Title VII claims against Mr. Kraft, Mr. Kanagie, and Dan Carr.

## IV. Pennsylvania Law Claims

### A. Timeliness of Hostile Work Environment Claim

The Defendants first move for summary judgment on Ms. Graudins's state-law claims on the grounds that her hostile work environment sexual harassment claims are time-barred.[2] "To bring suit under the PHRA, a plaintiff must first have filed an administrative complaint with the PHRC within 180 days of the alleged act of discrimination." *Woodson v. Scott Paper Co.*, 109

---

[2] At oral argument, the Defendants clarified that they are not contending that Ms. Graudins's state-law retaliation claims are time-barred. *See* Docket No. 56 at 20-21.

F.3d 913, 925 (3d Cir. 1997). Therefore, if the last act of harassment alleged by a plaintiff occurred more than 180 days before a plaintiff filed her complaint with the PHRC, then the plaintiff's hostile work environment claim is time-barred. *See Yeager v. UPMC Horizon*, 698 F. Supp. 2d 523, 539 (W.D. Pa. 2010). Here, Ms. Graudins has not delineated any specific instance of harassment after September 30, 2010, and she thus failed to file her PHRA complaint within the limitations period.[3]

Ms. Graudins attempts to excuse the untimeliness of her state-law hostile work environment claims by relying on the doctrine of equitable tolling. Courts permit the equitable tolling of a PHRA claim when: (i) "the plaintiff actively pursues his [or her] judicial remedies but files a defective pleading during the statutory period;" (ii) "the deadline for filing has passed due to the plaintiff's reliance on his adversary's misconduct or misrepresentation;" or (iii) "the plaintiff was prevented from asserting his rights in some extraordinary way." *Yeager*, 698 F. Supp. 2d at 540 (citations and quotations omitted) (brackets in original). Here, Ms. Graudins contends that she may pursue her PHRA claim under the latter two types of equitable tolling. First, she states that Retro Fitness actively misled her by failing to provide her a copy of its policies and procedures, including those pertaining to sexual harassment. However, given the severity of the unambiguous conduct that Ms. Graudins alleges, such as sexual assault and repeated groping and sexual propositions, it is not at all clear why Retro Fitness's failure to provide a handbook prevented her from filing a timely complaint.

Ms. Graudins also argues that she was "prevented from asserting [her] rights in some extraordinary way," *Yeager*, 698 F. Supp. 2d at 540, because she testified at Paul Carr's criminal trial and he was not convicted until January 13, 2011, some seven months after the events at

---

[3] Although Paul Carr allegedly handed Ms. Graudins a paycheck on her last day of work, a reasonable jury could not find that the mere physical act of handing someone an item such as a paycheck (without any other conduct) rises to the level of sexual harassment.

issue.  However, she fails to try to explain why she could not file an administrative complaint before the trial's conclusion.  Be that as it may, it certainly appears that she could have done so between its conclusion and March 29, 2011, the date she did file her complaint.

Apart from her equitable tolling argument, Ms. Graudins also seeks to rely on the continuing violation doctrine.  Under this doctrine, Ms. Graudins's "hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice *and at least one act falls within the [appropriate] time period*."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) (emphasis added); *see also Mandel v. M&Q Packaging Corp.*, No. 11-3193, 2013 U.S. App. LEXIS 864, at *14-15 (3d Cir. Jan. 14, 2013) ("To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice *and that at least one act falls within the applicable limitations period*.") (emphasis added).

Here, Ms. Graudins cannot rely on the continuing violation doctrine because she presents no evidence that an act contributing to a hostile work environment occurred on a specific date within the applicable limitations period.  While Ms. Graudins seeks to rely on her complaint's allegation that she was harassed on a daily basis up through the date of her termination, *see* Docket No. 53 at 22-23, a plaintiff "cannot rely on unsupported allegations in [her] complaint" to survive a motion for summary judgment.  *Shah v. Bank of Am.*, 346 F. App'x 831, 833 (3d Cir. 2009).  Furthermore, as stated above, no reasonable juror could conclude that an act contributing to a hostile work environment occurred on Ms. Graudins's last day of work simply because Paul Carr (apparently silently and without any alleged silent "message") handed her a paycheck.  *See* Docket No. 56 at 23 ([The Court]: "[Y]ou're not alleging that [Paul Carr] said something or . . . did something of a specific nature.  It was just the fact of him being the one to give her the

check."  [Ms. Graudins's counsel]: "Well . . . yes.").  The Court thus dismisses Ms. Graudins's state-law hostile work environment claims as time-barred.

## B.  Exhaustion of Administrative Remedies

The Defendants next move for summary judgment as to the state-law retaliation claims against Mr. Kraft, Dan Carr, and Mr. Kanagie by arguing that Ms. Graudins failed to exhaust her administrative remedies.  "A Title VII action ordinarily may be brought only against a party previously named in an EEOC action."  *Schafer v. Bd. of Pub. Educ.*, 903 F.2d 243, 251 (3d Cir. 1990); *see also McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 398-99 (E.D. Pa. 2002) (noting that this requirement extends to naming individual defendants in PHRC complaints).  Ms. Graudins (who filed her administrative complaint while represented by her current counsel) failed to name any of the movant individual defendants in either the caption or the body of her administrative complaint.  However, Ms. Graudins may rely on an exception that allows her to pursue her claims against the individual defendants if they "received notice [of the claims against them] and . . . there is a shared commonality of interest with [Retro Fitness]."  *Schafer*, 903 F.3d at 252; *see also Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977) (the purpose of requiring a party to be named in an administrative complaint is to give notice to the charged party and to provide an opportunity to resolve the situation without litigation).  To determine whether this exception applies, courts rely on the four-factor *Glus* test established by the Third Circuit Court of Appeals.  *See id.*[4]

---

[4] The four factors are:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual

The *Glus* test does not permit Ms. Graudins to pursue claims against Dan Carr or Jim Kanagie. Ms. Graudins failed to name or describe these individuals anywhere in her administrative complaint, both individuals were prejudiced by this failure because they had "no notice" of her claims and were thus "deprived of the opportunity to informally resolve" those claims, and Ms. Graudins identifies no evidence demonstrating that either of these men "represented to [Ms. Graudins] that [they] should be contacted only through [Retro Fitness]." *Ivy v. Verizon Pa., Inc.*, No. 10-1641, 2011 U.S. Dist. LEXIS 46507, at *8-9 (W.D. Pa. Apr. 29, 2011). Therefore, the Court must conclude that Ms. Graudins failed to exhaust her administrative remedies against Dan Carr and Mr. Kanagie.

The issue of exhaustion is a closer question with respect to Mr. Kraft, given that he owned Retro Fitness at the time of the incidents in question and thus arguably shared a commonality of interest with Retro Fitness. However, at least one court within this district has held that individual owners must be named (or at least have their conduct described) somewhere in a PHRC complaint to "receive notice" of the charges against them. *See McInerney*, 244 F. Supp. 2d at 399; *see also Schafer*, 903 F.2d at 252 (an unnamed party must receive notice of the charges against him in addition to sharing a commonality of interest with a party named in an administrative complaint). Here, Mr. Kraft was not named in the administrative complaint, and, based on a fair reading of the administrative complaint, none of the allegations in it provided him with "notice that he would be subject to suit in his individual capacity." *McInerney*, 244 F. Supp. 2d at 399. Therefore, Ms. Graudins failed to exhaust her administrative remedies as to the

---

prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Glus*, 562 F.2d at 888.

three movant individual defendants, and the Court will dismiss her state-law retaliation claims against them.

## C.  *Intentional Infliction of Emotional Distress*

The Defendants also seek summary judgment as to Ms. Graudins's claim for intentional infliction of emotional distress.  The Pennsylvania Supreme Court's holding in *Hoy v. Angelone*, 720 A.2d 745 (Pa. 1998), that an individual defendant was not liable on an intentional infliction of emotional distress claim is instructive here.  *Id.* at 754-55.  The court stated that, assuming *arguendo* that intentional infliction of emotional distress was a recognized tort under state law, it required conduct that was "extreme or clearly outrageous."  *Id.* at 753-54.  The court also noted that the defendant sexually harassed the plaintiff through behavior that included "sexual propositions, vile and filthy language, off-color jokes, physical contact with the back of [the plaintiff's] knee, and the posting of sexually suggestive pictures."  *Id.* at 747.  However, while such conduct was "highly offensive and unacceptable," it was neither extreme nor outrageous enough to sustain an intentional infliction of emotional distress claim, especially because the plaintiff was not subject to retaliation for rejecting the defendant's propositions.  *Id.* at 754-55.

In this case, Mr. Kanagie and Dan Carr allegedly subjected Ms. Graudins to behavior quite similar to the behavior at issue in *Hoy*.  Moreover, Ms. Graudins has admitted that, like the individual defendant in *Hoy*, Mr. Kanagie and Dan Carr did not retaliate against Ms. Graudins.  *See* Docket No. 56 at 31 ("[Mr. Kraft's] the only one – he's the one who fired [Ms. Graudins].").  Therefore, the Court will grant the motion for summary judgment with respect to the intentional infliction of emotional distress claim against the individual defendants.[5]

---

[5] Although Mr. Kraft allegedly retaliated against Ms. Graudins for reporting Paul Carr's assault, he did not personally harass her, and his conduct is thus insufficiently outrageous to support a claim for intentional infliction of emotional distress.  *See Cox v. Keystone Carbon Co.*,

Although Ms. Graudins cannot bring an intentional infliction of emotional distress claim against the individual defendants, this result does not bar her from bringing such a claim against Retro Fitness itself. "'[C]ourts applying Pennsylvania law have found conduct outrageous in the employment context . . . where an employer engaged in both sexual harassment and other retaliatory behavior against an employee.'" *Capriotti v. Chivukula*, No. 04-2754, 2005 U.S. Dist. LEXIS 48263, at *9 (E.D. Pa. Jan. 14, 2005) (quoting *Cox*, 861 F.2d at 395-96). Here, Retro Fitness employees allegedly harassed Ms. Graudins, and Mr. Kraft allegedly retaliated against her for reporting the most severe instance of such harassment. Because its employees both harassed and retaliated against Ms. Graudins, Retro Fitness's conduct is sufficiently outrageous for Ms. Graudins's claim against it to proceed. *See Bowersox v. P. H. Glatfelter Co.*, 677 F. Supp. 307, 308, 311-12 (M.D. Pa. 1988) (denying employer's motion to dismiss an intentional infliction of emotional distress claim because the plaintiff alleged that her supervisor sexually harassed her and subjected her to retaliation).

Retro Fitness also argues that the PHRA and Pennsylvania worker's compensation law preempt Ms. Graudins's claim for intentional infliction of emotional distress. The Court notes that, with respect to intentional infliction for emotional distress claims, a "general rule has emerged, albeit tortuously . . . that if all or part of the facts that would give rise to a [statutory] claim would also independently support a common law claim, the common law claim is not preempted by the PHRA." *Releford v. Pa. State Univ.*, No. 10-1621, 2011 U.S. Dist. LEXIS 25546, at *23 (M.D. Pa. Mar. 14, 2011) (citations and quotations omitted); *see also Schweitzer v. Rockwell Int'l*, 586 A.2d 383, 389 (Pa. Super. Ct. 1990) ("[N]othing in the intent of the Legislature or in the language of the [PHRA] forbids independent legal actions . . . [for]

---

861 F.2d 390, 395 (3d Cir. 1988) (noting that intentional infliction of emotional distress generally requires retaliatory behavior *and* sexual harassment).

intentional infliction of emotional distress.").  Here, a reasonable jury could find that the harassment and retaliation allegedly suffered by Ms. Graudins "amount[s] to the outrageous behavior necessary to support a claim for intentional infliction of emotional distress" even in the absence of a statutory duty to avoid such behavior.  *See Releford*, 2011 U.S. Dist. LEXIS 25546, at *24.  Therefore, the PHRA does not preempt Ms. Graudins's intentional infliction of emotional distress claim.

The Court also finds that worker's compensation law preemption does not apply in this case.  In *Schweitzer*, the plaintiff alleged that her supervisor sexually harassed her and then brought a claim against her employer for intentional infliction of emotional distress based on the harassment and subsequent retaliation.  586 A.2d at 385.  The court noted that the Pennsylvania Worker's Compensation Act does not preempt a claim if an employee's injury is "'caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee or because of his employment.'"  *Id.* at 391 (quoting 77 Pa. Cons. Stat. § 411(1)).  Here, a reasonable jury could find that the "alleged emotional distress [suffered by Ms. Graudins] arose from harassment personal in nature and not part of the proper employer/employee relationship."  *Schweitzer*, 586 A.2d at 391.  In particular, the Court notes that a jury could conclude that Paul Carr's alleged assault "was motivated by personal reasons," and that the question of what motivated the harassment suffered by Ms. Graudins "is inherently fact-intensive."  *Huggins v. Coatesville Area Sch. Dist.*, No. 07-4917, 2008 U.S. Dist. LEXIS 65604, at *41, 44 (E.D. Pa. Aug. 27, 2008) (citations and quotations omitted).[6]  Therefore, the

---

[6] Although the Defendants cite *Durham Life Insurance Co. v. Evans*, 166 F.3d 139 (3d Cir. 1999) in their motion for partial summary judgment, the *Evans* court expressly declined to express an opinion as to whether the Pennsylvania Worker's Compensation Act preempts an intentional infliction of emotional distress claim involving a sexual assault.  *See id.* at 160 n.16.

Worker's Compensation Act does not preempt Ms. Graudins's claim for intentional infliction of emotional distress, and Retro Fitness's motion for summary judgment on that claim is denied.

## D. Negligent Supervision

Negligent supervision claims are generally preempted by the PHRA. *See McGovern*, 2004 U.S. Dist. LEXIS 1985, at *22 ("[S]ince Plaintiff has alleged the same set of facts to support her negligence claim as for her sexual harassment claim, we find that her negligence claim is preempted[.]"). Ms. Graudins attempts to avoid this general rule by arguing that Retro Fitness negligently supervised its property and thereby allowed Paul Carr to sexually assault her. *See* Docket No. 53 at 31. However, the record does not appear to offer any indication that Retro Fitness was negligent in keeping its property safe for employees. Instead, Ms. Graudins argues that Retro Fitness negligently supervised a room simply because sexual harassment occurred in that room. Therefore, the Court will dismiss Ms. Graudins's negligent supervision claim.[7]

## V. Back Pay

With respect to the issue of back pay, the Defendants argue that Ms. Graudins cannot receive such pay because she stopped working at a restaurant a few months after Retro Fitness terminated her, and thereafter did not work at all. However, the Defendants do not specify the *amount* by which any back pay award should be reduced. Their failure to do so forecloses the possibility of granting summary judgment on this issue. *See Stager v. Beverly Health & Rehab. Servs., Inc.*, No. 06-101, 2008 U.S. Dist. LEXIS 59475, at *70-72 (W.D. Pa. Aug. 6, 2008) (noting that the Third Circuit Court of Appeals has "expressly rejected the idea that the failure of a plaintiff to mitigate his or her damages somehow operates as a complete bar to an award of backpay").

_____

[7] The Court also grants summary judgment as to Ms. Graudins's claim for negligent infliction of emotional distress, as she has stipulated that this claim is preempted by the Pennsylvania Human Relations Act. *See* Docket No. 53 at 34.

## VI.  Retro Fitness's Liability for Paul Carr's Behavior

The Defendants also use their motion for summary judgment to seek a declaration that Retro Fitness's liability for Ms. Graudins's Title VII hostile work environment claim cannot be based on Paul Carr's behavior.  To support this argument, the Defendants cite *Huston v. Procter & Gamble Paper Products Corp.*, 568 F.3d 100 (3d Cir. 2009), and claim that there is no evidence that Retro Fitness knew or should have known of Paul Carr's behavior prior to his assault.  However, the Defendants' briefing omits key language from *Huston*, which states that "employer liability for co-worker harassment exists . . . *if the employer failed to provide a reasonable avenue for complaint* or, *alternatively*, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action."  568 F.3d at 104 (emphasis supplied); *see also Rorrer v. Cleveland Steel Container*, 712 F. Supp. 2d 422, 431 (E.D. Pa. 2010) (denying a defendant's motion for summary judgment because the plaintiffs "presented triable issues of fact as to whether [the defendant] provided an effective avenue of complaint").

The Defendants' briefing on this issue wholly fails to either mention this "reasonable avenue for complaint" standard or show how Retro Fitness provided a "reasonable avenue" for Ms. Graudins to complain about Paul Carr's behavior.  In particular, Ms. Graudins has testified that Paul Carr made a statement about "taking [her] into a backroom" and having intercourse with her about a week before he assaulted her, and that she did not feel safe reporting this statement because her supervisor, Dan Carr, was Paul Carr's brother.  Given this situation, a jury could find that Ms. Graudins lacked a "reasonable avenue for complaint" about Paul Carr's harassment, and the Court denies the motion for summary judgment as to this issue.

## VII. Motion to Sever Claims

The Federal Rules of Civil Procedure give district courts broad discretion in deciding whether to sever a case by way of severing parties or claims. *See, e.g.*, *BancMortgage Fin. Corp. v. Guarantee Title & Trust Co.*, 99-2932, 2000 WL 1521600, at *1 (E.D. Pa. Oct. 6, 2000). Federal Rule of Civil Procedure 21 states: "On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Federal Rule of Civil Procedure 42(b) allows a court to order that certain claims or issues be dealt with in separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize."

While these two rules have similar effects, they function differently. *See, e.g.*, *Official Comm. of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, 354-55 (E.D. Pa. 2000). Severance pursuant to Rule 21 essentially creates a separate case, the disposition of which is final and appealable. *Id.* at 354. Rule 42(b) does not create a new case, but bifurcates issues or claims within a single case for separate trials. *Id.* A claim that is bifurcated under this rule is not final and appealable as long as other claims in the case remain unresolved. *Id.* at 354-55.

Courts consider the same factors when deciding whether to sever claims under either rule. *See, e.g.*, *BancMortgage*, 2000 WL 1521600, at *2. These factors are the "convenience of the parties, avoiding prejudice, and promoting expedition and economy." *Id.* Courts generally avoid separating trials, however. *See, e.g.*, *Corrigan v. Methodist Hosp.*, 160 F.R.D. 55, 56 (E.D. Pa. 1995). "This is because a single trial will generally lessen the delay, expense and inconvenience to the parties and the courts." *Id.* (quotation marks and citation omitted).

In *Corrigan*, the court dealt with a negligent credentialing claim against a hospital and a negligence claim against a doctor who worked there. 160 F.R.D. at 56. The doctor sought to

separate the trial of the negligent credentialing claim against the hospital because evidence pertinent to that claim would show that the doctor had questionable medical judgment and had been sued numerous times. *Id.* The court rejected the defendant's severance motion, holding that while "defendants would be relieved of the burdens associated with a joint defense, [the plaintiff] would be put to the cost of two separate trials, and would suffer delay in resolution of her claims." *Id.* at 58. The court also noted that "separate trials would not promote judicial economy because a single trial would take less time and be resolved sooner [than] separate trials." *Id.*

In this case, the convenience of the parties and judicial economy both weigh against severance. While the moving Defendants may be relieved of some burdens and risks entailed in jointly defending the case with Paul Carr, Ms. Graudins would have to bear the costs of two trials and may see the resolution of her claims delayed. Severance also would hinder judicial economy, forcing the Court to deal with separate cases or separate trials instead of handling these claims in a single action. "Given this balance of the equities, separate trials [are] unwarranted." *Id.*

As for the factor of prejudice, the moving Defendants have not shown that they would be so unduly prejudiced if all claims are heard together that severance should be granted. Prejudice may be demonstrated if evidence about a plaintiff's injuries could influence how the jury considers other issues. *See id.* at 57. However, courts may use various measures to prevent prejudice when multiple defendants are tried together, including cautionary warnings and limiting instructions to the jury. *See id.* As *Corrigan* noted, in the "criminal context, courts frequently hold that juries are presumed capable of following their instructions, and joint trials

[are] upheld despite a possibility of prejudice. . . . [W]e see no reason to set a higher test in civil cases." *Id.*

In this case, the moving Defendants have not shown they would be so prejudiced by trying the claims together that severance is warranted. Because Paul Carr's assault could have contributed to a hostile work environment and Ms. Graudins's reporting of the assault allegedly led to her termination, the Defendants have not demonstrated that "the matters are unrelated or involve different evidence." *Id.* Nor is this a case involving the claims of multiple plaintiffs, in which "evidence admissible for the purposes of one party's claim may not be admissible or relevant to the claims of his co-parties." *Klimaski v. Parexel Int'l*, No. 05-298, 2005 WL 857350, at *5 (E.D. Pa. Apr. 4, 2005). Therefore, to the extent that the Defendants have demonstrable concerns stemming from a joint trial of Ms. Graudins's claims, this Court will address those concerns by considering any evidentiary motions made by the parties, as well as by giving appropriate instructions, which "juries are presumed capable of following." *Corrigan*, 160 F.R.D. at 57.

## VIII.  Conclusion

For the foregoing reasons, the Court grants the motion for partial summary judgment as to: (i) Ms. Graudins's Title VII claims against the individual defendants; (ii) all of her state-law hostile work environment claims; (iii) her state-law retaliation claims against the individual defendants; (iv) her claims for intentional infliction of emotional distress against the individual defendants; and (v) her claims for negligent infliction of emotional distress and negligent supervision. The Court denies the motion with respect to the issues of back pay and Retro Fitness's liability for intentional infliction of emotional distress and Paul Carr's behavior. Additionally, the Court denies the Defendants' motion to sever. Ms. Graudins may proceed with

her Title VII claims and her state-law retaliation and intentional infliction of emotional distress

claims against Retro Fitness, as well as her claims against Paul Carr.

        An Order consistent with this Memorandum follows.


                      BY THE COURT:


                      */s/ Gene E.K. Pratter*
                      GENE E.K. PRATTER
                      United States District Judge